IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| EDWARD C. STALEY,<br><br>                    Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>                    Defendant. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br>Case No. 2:18-cv-941-TC |

Pro se plaintiff Edward Staley, who is a veteran and retired dentist, has filed various claims under the Federal Tort Claims Act[1] (FTCA) against the United States in connection with medical treatment he received from employees of the Department of Veterans Affairs (VA).  His first set of claims relates to alleged malpractice by dental/periodontics professionals—the dental malpractice claim—and malpractice by medical and mental health professionals—the medical malpractice claim.  The remaining claims assert gross negligence, negligent infliction of emotional distress, and loss of consortium.

The United States has filed a motion for summary judgment in which it asserts that (1) Dr. Staley did not submit a timely administrative claim for dental malpractice; (2) Utah's statute of repose bars Dr. Staley's medical malpractice and dental malpractice claims; (3) Dr. Staley cannot establish a prima facie case of medical malpractice because he lacks the necessary

---

[1] 28 U.S.C. § 2671 et seq.

expert witness evidence; and (4) his remaining tort claims fail for various reasons, including a lack of evidence.

The United States also filed a motion in limine seeking to exclude Dr. Staley's expert testimony on issues relating to his medical malpractice claim.  Dr. Staley filed a competing motion in limine asking for an order excluding testimony of the United States' expert witness, to which the United States responded by filing a motion to strike.

For the reasons set forth below, the court grants the United States' Motion in Limine to exclude Dr. Staley's expert testimony concerning medical malpractice, grants the United States' Motion to Strike Dr. Staley's Motion in Limine, and grants the Motion for Summary Judgment.

## FACTS

Plaintiff Edward Staley is a retired dentist who has periodontal disease.  As a veteran, he received treatment for various medical ailments from professionals in the VA Salt Lake City health care system.  He primarily contends that VA professionals failed to diagnose and treat his periodontitis, which led to extensive bone loss.

Dental and periodontal professionals from the VA have cared for his teeth and treated his advancing gum disease and bone loss since at least 2007.  Dr. Staley asserts he first learned of the harm that was caused by failure to properly diagnose and treat the disease when he saw VA periodontist Dr. Eric Badger on January 6, 2014.

In November 2015, he submitted a claim to the VA alleging that those VA professionals committed malpractice by failing to timely diagnose and treat his periodontitis over the years. He followed that claim with an April 2016 claim alleging malpractice in connection with VA professionals' treatment of his other maladies, both physical and psychological.

2

**Administrative Claims**

Dr. Staley, who was required to exhaust administrative remedies under the FTCA, filed

two administrative claims with the VA using the Standard Form 95 (SF-95).  The first SF-95,

dated November 3, 2015, asserted his dental malpractice claim.  In the second SF-95, dated April

1, 2016, he filed his medical malpractice claim.

1.  The Dental Malpractice Administrative Claim

In his November 2015 form SF-95, he wrote, in the form's box titled "date and day of

accident," "Discovered 1-6-2014."  (Nov. 3, 2015 SF-95, attached as Ex. B to Pl.'s Am. Compl.,

ECF No. 3.)  In Box 8, for the "basis of claim," he wrote, "Failure of the VA to properly evaluate

diagnose treat and maintain progressing advancing severe periodontal bone and attachment loss.

Dr. Eric Badger VA periodontist first told me the seriousness of the condition 1-6-14, subsequent

cone beam radiographs were exposed in 2014."  (Id.)  In the section asking the claimant to "state

nature and extent of each injury … which forms the basis of the claim," Dr. Staley wrote, "See

[box] #8 above.  Tremendous mental anguish.  I am a dentist – spent my entire life preventing &

treating this in others & preventing it (trying to) in myself.  This is deeply humiliating to me –

pain & suffering."  (Id.)

2.  The Medical Malpractice Administrative Claim

Dr. Staley filed his medical malpractice claim five months later, on April 1, 2016.  For

the "date and day of accident," he wrote, "last several years – ongoing."  (Apr. 1, 2016 SF-95,

attached as Ex. J to Pl.'s Am. Compl., ECF No. 3.)  To identify the "time," he wrote "always

lately."  (Id.)  And the "basis of claim" was simply "failure to adequately and humanely treat

pain & suffering while supposedly under the care of the Dept. of Veterans Affairs," accompanied

by a three-page attachment.  In that document, he presented a lengthy narrative describing a

myriad of maladies, including "pain and inflammation" from tissue damage and spinal injuries,

"C-reactive protein (crp) level," diabetes, sleep disorders, "myofascial and chronic pain

syndromes," osteoporosis, and "pain and numbness" in his leg and foot.  (Id.)  Finally, under

"State nature and extent of each injury … which forms the basis of the claim," Dr. Staley

reiterated his earlier response by writing "failure to adequately and humanely treat pain and

suffering."  (Id.)

The VA denied his claims.  He then filed a complaint in this court on December 7, 2018.

**Plaintiff's Complaint**

In his Amended Complaint, Dr. Staley elaborated on his SF-95 allegations.  His dental

malpractice claim focuses on the VA's alleged failure to "properly evaluate, diagnose, record,

monitor, inform the Plaintiff concerning, prevent, and/or treat progressing moderate to severe

periodontal bone destruction and attachment deterioration …."  (Am. Compl. ¶ 32, ECF No. 3.)

He again alleges that he discovered his injury on January 6, 2014:

> Before 2014, during the time he had been under the care of the VA, Dr. Staley
> had never been legally diagnosed, informed of, treated, or referred for treatment
> for severe periodontal bone loss as diagnosed on 01/06/2014 on which day he
> was, finally, formally evaluated and diagnosed with chronic, generalized
> moderate to severe periodontitis (periodontal bone and attachment loss) with
> (generalized) gingival recession. … In fact, the dental portion of Dr. Staley's VA
> ratings examination on 6/19/2001 stated no bone loss in his mandible or maxilla.
> Therefore, 01/06/2014 was the day Plaintiff first discovered he had such severe
> damages . . . .

(Id. ¶¶ 20–21.)

His medical malpractice claim is much broader.  He alleges, for example, that as a result

of the alleged negligent medical treatment at the VA, he suffers from "high level global pain,

both chronic and acute," "chronic low serum sodium levels," "myofascial pain dysfunction

syndrome," "osteopenia/osteoporosis," "extremely high … level of inflammatory C-reactive

protein," "cardiovascular disease," "system inflammation," "erectile dysfunction," "carotid

artery calcifications," "kidney disease," "chronic hyperglycemia," and "ophthalmologic (cataracts and retina)" conditions.   (Id. ¶¶ 23, 45.)

Dr. Staley does not, however, limit his medical malpractice complaint to physical maladies.  He also alleges mental health injuries.

> Defendants VA failed to explore the possibility of his diagnosed anxiety conditions being predominantly caused by his history of Post-Traumatic Stress Disorder (PTSD) instead of their diagnosis of major depression, for which Dr. Staley never met criteria for that diagnosis in DSM-IV or V (catalogs of classifications of mental disorders used by mental health professionals during the periods of Plaintiff's treatment.) VA, thus, failed to explore any and all therapeutic avenues available to them, allowing patient to continue to needlessly suffer. In fact, VA ignored their own available specific therapies for PTSD for the Plaintiff, even though the condition had been diagnosed years before.

(Id. ¶ 41.)  He further alleges that his systemic physical maladies were caused or exacerbated by sub-par medical treatment and "contributed to physical and mental pain and suffering, and continue to contribute to profound emotional distress causing frustration, bitterness, anger, family discord, and loss of consortium, and greatly aggravating the consequences of his diagnosed PTSD and anxiety, among other effects."  (Id. ¶ 48.)

Rather than focusing on the specific actions of individuals, he alleges a broad swath of treatment received over several years by a general group of people:

> Defendant VA's employee dentists and other healthcare/medical/dental providers, agents, employees, staff, administrators, residents, students and educators who have been responsible for and have participated in Plaintiff's care, either directly or indirectly acting on behalf and under the auspices of the Defendant VA, … always had a choice of acting with reasonable diligence to ensure the standards of care were met ….

(Id. ¶ 50.)

### Expert Witness Evidence

Both parties have designated expert witnesses.  Dr. Staley has one expert: himself.  He produced the "EXPERT REPORT OF: Edward C. Staley, DDS, FSGD, ABGD," in which he

declares, "As a licensed dentist and former dental educator for the last 45 years, I am an expert for myself, the Plaintiff, in this Pro Se litigation." (Staley Expert Report, Ex. 2 to Mot. for Summ. J. at 14, ECF No. 26-2.) According to his Report, he is certified by the "American Board of General Dentistry … and the Federal Services Board of General Dentistry, an entity recognized by the Defendant, United States, for federally employed dentists with 2 years of education and training in a general dentistry residency accredited by American Dental Association." (Id.) He is retired from the practice of dentistry.

The United States hired Mark Mangelson, DDS MS. Dr. Mangelson, who is "a doctor of dental surgery with a masters in periodontics, [and] whose subject of expertise includes the field of periodontology, is a board-certified periodontist." (United States' Designation of Expert Witnesses, ECF No. 19.) The United States hired Dr. Mangelson to opine on numerous issues, including whether Dr. Staley was aware, or should have been aware, of his periodontitis before January 6, 2014 (an issue relevant to whether Dr. Staley filed a timely claim).

**Dr. Staley's Notice of his Dental Malpractice Claim**

Based on his review of Dr. Staley's medical records, Dr. Mangelson concluded that Dr. Staley "was aware of his diagnosed periodontitis and bone loss as early as May 9, 2007, when he received localized scaling and root planing." (Mangelson Expert Report at 40, attached as Ex. 3 to U.S. Mot. Summ. J., ECF No. 26-3.) Dr. Mangelson also concluded that Dr. Staley "was informed of periodontitis seven separate times prior to seeing periodontist, Dr. Badger, on January 6, 2014." (Id.) He identified the following dates:

- *May 9, 2007 (SLC VA)*
  Emergency basis appointment.
  But he was informed of periodontitis; he even received localized scaling and root planing; plaintiff was informed to make an appointment for a comprehensive dental exam (but he did not).

6

- *October 2, 2008 (Phoenix VA)*
  Emergency basis appointment.

- *March 25, 2010 (SLC VA)*
  Emergency basis appointment.

- *December 6, 2010 (SLC VA)*
  Emergency basis appointment.
  Plaintiff received a complete periodontal exam, and he was informed of
  "generalized moderate periodontitis."

- *June 30, 2011 (SLC VA)*
  Emergency basis appointment.

- *November 15, 2012 (SLC VA)*
  Emergency basis appointment.
  Plaintiff received periodontal screening and recording (PSR).

- *November 5, 2013 (SLCA VA)*
  First time Plaintiff came in for the purpose of a scheduled cleaning, which
  repeatedly had been recommended to him over the years.

(Id. at 40–41.)  According to Dr. Mangelson,

> Before November 5, 2013, Plaintiff, without warranted explanation, was merely
> seeking and scheduling emergency exams. Plaintiff refused, inexplicably, to take
> the initiative required of him to make the repeatedly recommended hygiene and/or
> periodontal appointments – except on November 5, 2013 when he, for the first
> time, finally scheduled to come in for hygiene/perio care. He relatively soon
> thereafter saw periodontist, Dr. Badger, on January 6, 2014.

(Id. at 41.)

In response, Dr. Staley contends that he "was never told of [his] condition of progressive

chronic generalized severe periodontal bone loss before 2014 in the VA or otherwise."  (Decl. of

Edward C. Staley ¶ 1, ECF No. 27-8.)  According to him, "he was first aware of generalized

severe periodontal bone loss on 1/6/2014," when Dr. Badger evaluated him.  (Id.)

As discussed below, his declaration does not adequately dispute Dr. Mangelson's

information and conclusions.

## ANALYSIS

The court first addresses the motions in limine, because they affect the viability of Dr. Staley's claims.  For the reasons set forth below, the court excludes Dr. Staley's testimony about his medical malpractice claim.

As for the motion for summary judgment, the court dismisses all of Dr. Staley's claims for lack of evidence (most notably a lack of necessary expert testimony) and failure to file timely claims.

### A.   Motions in Limine

#### 1.   Dr. Staley's Motion in Limine

Dr. Staley moves the court to exclude Dr. Mangelson's report and testimony.  His motion is relatively brief (fourteen pages), but he attaches twelve exhibits (totaling 415 pages) in support, and incorporates a significant amount of the exhibits' content into his motion to support his arguments.  (See Pl.'s Omnibus Mots. in Limine to Exclude United States Expert's Report and Testimony, ECF No. 29 ("Staley Mot. in Limine").)

He relies extensively on four exhibits.  Exhibit 1, which is 19 pages long, is titled "Evidence of Prejudicial Bias in Defendant's Expert Report."[2]  His Exhibit 2 (64 pages long) is titled "Evidence of Misrepresentations Showing Bias in Defendant's Expert Report."[3]  Exhibit 3 is 22 pages long and purports to offer "Evidence of Misrepresentation in VA Scheduling in Defendant's Expert Report."[4]  And Dr. Staley presents "Evidence of Unqualified Testimony in Defendant's Expert Report" in his 21-page Exhibit 4.[5]

---

[2] ECF No. 29-2.
[3] ECF No. 29-3.
[4] ECF No. 29-4.
[5] ECF No. 29-5.

At a minimum, Dr. Staley's fourteen-page motion incorporates and relies on an additional 126 pages, many of which contain argument supporting his content that the court must "exclude all the expert's opinions and testimony regarding how the patient was managed." (Staley Mot. in Limine at 2.) For instance, he argues that Dr. Mangelson's report "reveals contempt for the Plaintiff's education, training, knowledge, experience, integrity, intelligence, motives, and dental material preferences, all implying the Plaintiff to be derelict." (Id.) He then simply cites to "Exhibit 1." He also generally asserts that "Dr. Mangelson has grossly misinterpreted VA dental/medical records regarding the veteran patient, making his conclusions unsound and unreliable, thus inadmissible," and incorporates "Exhibit 2." (Id.) According to Dr. Staley, Dr. Mangelson "misinterprets data, which clearly conflicts with the VA's own published criteria, distorting historical facts and data concerning VA classifications of periodontal disease and the veteran patient's dental history," and again cites to "all" of Exhibit 2. (Id. at 2–3.)

He cites generally to Exhibits 3, 5, 6, 10, and 12 in support of his argument that the court must "exclude any of Dr. Mangelson's opinions and testimony concerning appointment scheduling in the VA system[.]" (Id. at 3.) And he relies on Exhibit 4 when asserting the court must "exclude any opinions or testimony concerning the fields of restorative dentistry, endodontics, and fixed prosthodontics (crown and bridge) and materials used in them. According to Dr. Staley, Dr. Mangelson "is not an expert in those fields," "is not qualified and gives unsound opinions," and his methods are "unreliable." (Id.) He then adds, "Please, see additional reasons stated in Plaintiff's accompanying exhibits 1,2,3,4." (Id.)

Given that unmanageable set of arguments, the United States filed a motion to strike rather than respond to the merits of Dr. Staley's motion in limine.[6]  The United States points out that the local court rules limited a non-dispositive motion to ten pages or 2,500 words, unless the movant obtained permission from the court to file an overlength motion.  See DUCivR 7-1(a)(4)(D) (2021).[7]

In response to the United States' motion to strike, Dr. Staley insists that his fourteen-page motion complies with the local rule.  He points out that the rule's page limitation excludes the "'face sheet, table of contents, table of authorities, signature block, certificate of services, and **exhibits**.'"  (Staley Opp'n to Mot. to Strike at 1, ECF No. 38 (quoting DUCivR 7-1(a) (emphasis in original).)  To him, his twelve exhibits "are not to be counted for the motion, obviously, according to the rule."  (Id. at 2.)  He also insists that his request to strike Dr. Mangelson's report "required extensive information to expose multiple misinterpretations and inaccuracies resulting in many exhibits."[8]  (Id.)

Labeling the documents as exhibits does not make them exhibits.  Dr. Staley does not address the fact that his motion relies substantially on the narrative and arguments in the documents he attached to his motion.

Pro se parties are not excused from complying with the Federal Rules of Civil Procedure and local court rules.  Nielsen v. Price, 17 F.3d 1276, 1277 (10th Cir. 1994) ("This court has

---

[6] Alternatively, the United States requested an enlargement of time to respond to any portion of Dr. Staley's motion the court decided to consider.

[7] The court has since amended its local rules to allow up to 3,100 words.  (See DUCivR 7-1(a)(4)(D) (Dec. 2021).)  Dr. Staley's filing goes far beyond that modestly increased limit.

[8] Dr. Staley's contention that the United States simply filed the motion to strike to "manipulate the Court" and "gain more time" to respond to his motion in limine is not supported by the record.  (See Staley Opp'n to Mot. to Strike at 2, ECF No. 38.)  More importantly, that is not a legitimate excuse for failing to comply with the local rule.

repeatedly insisted that pro se parties 'follow the same rules of procedure that govern other litigants.'") (quoting Green v. Dorrell, 969 F.2d 915, 917 (10th Cir. 1992)).  Dr. Staley did not request, much less obtain, permission to file his significantly overlength motion (nor would he have received permission if he had asked, given the true length of the motion and the nature of arguments typically presented in a motion to exclude expert testimony).  Accordingly, as the local rules require, the court grants the United States' motion to strike Dr. Staley's Motion in Limine.

### 2.  United States' Motion in Limine

Dr. Staley intends to testify about detrimental effects that he alleges his periodontal disease and the VA's treatment of his multiple ailments have had on his physical and mental health.  The United States asserts that Dr. Staley is not qualified to opine about the medical and mental health standards of care in a VA clinic or about whether his treatment caused his injuries.  Accordingly, it moves the court for an order under Federal Rules of Evidence 403, 702, and 703 excluding the opinions Dr. Staley presents in his expert report concerning his medical malpractice claim: "Even though Mr. Staley previously practiced dentistry, he is not a medical doctor.  Mr. Staley is not a psychologist or similar mental health professional.  Mr. Staley has no experience in these practice areas[.]"  (U.S. Mot. to Exclude Expert Testimony and Opinions of Edward C. Staley at 1, ECF No. 32.)

When assessing a challenge to the admissibility of expert testimony, the court "must first determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion."  United States v. Nacchio, 555 F.3d 1234, 1241 (10th Cir. 2009) (*en banc*) (quoting Fed. R. Evid. 702).  If the expert is qualified, the court must review his underlying reasoning and methodology to determine whether his opinion is reliable, as required

by Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  Id.  The United States contends that Dr. Staley fails the first requirement, that is, that he be qualified to give the opinions he offers in his report.

As the United States points out, Dr. Staley is neither a medical doctor nor a trained mental health practitioner.  To the extent he offers an opinion on a topic requiring the expertise of that type of expert, he is not qualified.

Dr. Staley does not seem to dispute that general proposition.  But he apparently believes he does not need the testimony of either one in order to prove the elements of his medical malpractice claim.  He contends his credentials and experience as a dentist, along with his personal experience and ability to describe his mental state, qualify him to offer testimony on all elements of his prima facie case.

Concerning his physical health, Dr. Staley insists the necessary expertise lies with a dentist because a medical doctor does not have the proper training.  According to him, "he and other dentists studied far more of medicine than physicians ever learn about dentistry in general and periodontics in particular. … To describe it, bluntly, 'medical doctors' don't study dentistry, thus, don't know dentistry or periodontics, thus would have difficulty relating periodontal effects on systemic health."  (Staley Opp'n to Mot. in Limine at 4–5, ECF No. 39.)  He favorably compares his training to that of a medical doctor and says that dentists, such as himself, have additional training that allows them to "evaluate the general health of all their patients and what potential affects and effects their treatment, therapeutic procedures, and medicaments would have on them."  (Id. at 5.)

He asserts he is qualified to "comment on systemic ramifications and effects of periodontal damage for [his] medical conditions that have already been diagnosed and treated"

by his doctors.  (Id. at 2.)  And he follows up with a rhetorical question: "[I]s it necessary to call a practitioner of every specialty of medicine for which periodontal disease can have an effect in this case for testimony about a periodontal question, a subject for which they have not been trained and know very little?"  (Id. at 7.)

At the same time, Dr. Staley claims he is "is not setting the standard of care for [his] related medical conditions and treatment.  He is reporting on the relationships common in the disease processes associated with periodontal bone destruction[.]"  (Id.)  In other words, he says he is not addressing the standard of care for treatment of his non-dental physical maladies (for example, cardiovascular disease, erectile dysfunction, "ophthalmologic (cataracts and retina)" problems, "high level global pain," osteopenia/osteoporosis, and kidney disease).  (See Am. Compl. ¶¶ 23, 45–47.)  But he essentially admits that he intends to testify about causation.  He wishes to opine about "how those already diagnosed pathologies have been influenced and exacerbated by periodontal disease…."  (Staley Opp'n to Mot. in Limine at 6 (emphasis added).)  According to Dr. Staley, his "systemic pathologies that are related to periodontal disease are documented in the medical records.  He knows these causal links because he lived them and studied them."  (Id. at 4 (internal citation omitted) (emphasis added).)

The issue of causation of his extensive list of maladies is complex.  A degree in dentistry and experience treating dental problems does not qualify a person to address the reasons why a person has, for example, cardiovascular disease, erectile dysfunction, osteoporosis, kidney disease, ophthalmologic diseases, and the like.  He has not satisfied the threshold requirement under Rule 702 that he be qualified to opine on the causation of his medical problems, whether individually or in combination.

In the mental health component of his medical malpractice claim, Dr. Staley contends the

VA staff's alleged delay in diagnosing and treating his periodontal disease caused "tremendous mental anguish" and "pain and suffering," and exacerbated his PTSD and "organic anxiety." (Id. at 8, 10.) He also more generally alleges the VA "failed to explore the possibility of his diagnosed anxiety conditions being predominantly caused by his history of Post-Traumatic Stress Disorder (PTSD) instead of their diagnosis of major depression, for which Dr. Staley never met criteria for that diagnosis in DSM-IV or V[9] (catalogs of classifications of mental disorders used by mental health professionals during the periods of Plaintiff's treatment)." (Am. Compl. ¶ 41.) He contends that the VA "failed to explore any and all therapeutic avenues available to them, allowing patient to continue to needlessly suffer," and believes VA medical professionals "ignored their own available specific therapies for PTSD for the Plaintiff, even though the condition had been diagnosed years before." (Id.)

According to Dr. Staley, none of that requires expert testimony because those issues are within a layperson's understanding. In his papers he describes the "mental anguish" he suffered after being "surprised by the gross periodontal bone loss" he saw on January 6, 2014. (Staley Opp'n to Mot. in Limine at 9.) He says "[l]aypersons can identify with mental anguish of loss, mourning, stress, concern for newly discovered and potential impending serious health problems, and exacerbation of those known to them. Thus, they do not need the direction of an expert to point out how those feelings relate to them." (Id. at 9–10 (internal citation omitted).)

Certainly a layperson can relate to another person's mental anguish. But that is not the same as being qualified to diagnose the mental illnesses of, for example, depression, anxiety, and PTSD, and to analyze whether the circumstances and treatment caused or exacerbated those

---

[9] DSM stands for "Diagnostic and Statistical Manual of Mental Disorders" issued by the American Psychiatric Association. The latest edition is referred to as DSM-5.

conditions.

Indeed, courts have drawn an important distinction between testimonial evidence from a layperson about the cause of emotional distress, on the one hand, and testimonial evidence from a medical professional about the cause of a complicated medical condition, on the other hand. For instance, in 1999 the D.C. Circuit issued a decision addressing the matter:

> Whereas testimony from lay witnesses may be sufficient to establish that an individual is "distressed" in some fashion, it may not be sufficient to establish that an individual suffers from a particular medical condition such as alcoholism or depression which only professional medical care providers may be qualified to diagnose. Moreover, lay witness testimony may not be sufficient to demonstrate that particular conduct *caused* these complex medical conditions.

Jefferson v. MilVets Sys. Tech, Inc., 172 F.3d 919, No. 97-5350 & 97-5361, 1999 WL 66027, at *1 (D.C. Cir. Jan. 26, 1999) (unpublished table decision) (emphasis in original).

The decision in Ferris v. Pennsylvania Federation Brotherhood of Maintenance of Way Employees, is also illustrative. That court wrote, "It is well settled that when 'the complexities of the human body place questions as to the cause of pain or injury beyond the knowledge of the average layperson … the law requires that expert medical testimony be employed.'" 153 F. Supp. 2d 736, 746 (E.D. Penn. 2001) (quoting Redland Soccer Club, Inc. v. Dep't of Army of the U.S., 55 F.3d 827, 852 (3d Cir. 1995)). Keeping that principle in mind, the court prohibited the plaintiff's treating physician from testifying about whether the defendants' conduct caused the plaintiff's mental health symptoms and diagnosed malady, because the witness had "no expertise in the diagnosis and treatment of depression and/or anxiety disorder, and particularly no expertise in the causes of those ailments[.]" Id. at 744. The court then barred the plaintiff's own proposed lay testimony "regarding any specific medical diagnosis of his mental ailments [because] the conditions from which he allegedly suffer[ed]—depression and anxiety disorder— are complex injuries beyond the knowledge of the average layperson." Id. at 746. And the court

15

prohibited the plaintiff from testifying about his "beliefs as to how his injuries were caused ... in the absence of expert testimony regarding causation[.]"  Id.

Other courts have reached similar conclusions.  In the disability case of Neri v. Board of Education for Albuquerque Public Schools, the Tenth Circuit allowed the plaintiff to testify about the physical and mental symptoms she experienced but held she was "not competent to testify that those symptoms were caused by PTSD or to opine on the physical or mental effects of PTSD generally, for those are clearly matters beyond the realm of common experience and require the special skill and knowledge of an expert witness."  860 F. App'x 556, 562 (10th Cir. 2021) (internal citation and quotation marks omitted).  In Hervey v. United States, where a pro se plaintiff brought a medical malpractice claim against a VA doctor for allegedly failing to diagnose PTSD, the district court excluded lay testimony about the standard of care and causation because those issues were "too complex to be within the common knowledge and experience of a layperson in order to fit within the common knowledge exception to the requirement for expert testimony."  Case No. 19-4033-SAC-ADM, 2020 WL 1809748, at *4 (D. Kan. Jan. 24, 2020).  See also De Sanctis v. Becerra, No. CIV 20-1346 RB/JHR, 2022 WL 168349, at *3 (D.N.M. Jan. 19, 2022) (barring lay witnesses in disability case from testifying about plaintiff's mental health problems because those issues were "'clearly matters beyond the realm of common experience and require the skill and knowledge of an expert witness'") (quoting Neri, 860 F. App'x at 562); Montoya v. Sheldon, 286 F.R.D. 602, 620 (D.N.M. 2012) (precluding treating physician from offering lay testimony about causation of plaintiff's panic attacks.

Dr. Staley is undisputedly not a mental health professional.  Yet he offers opinions that cross over into expert territory, including the standard of care and causation.  On the flip side of

the same coin, case law demonstrates that those issues are not properly the subject of lay testimony. Either way, Dr. Staley may not testify about topics that touch on the standard of care, breach of that standard, or causation in his claim that VA professionals committed malpractice when they treated his mental health problems.

As the party who offers the expert testimony, Dr. Staley has failed to meet his burden to show he is qualified. Nacchio, 555 F.3d at 1241. The court grants the United States' motion to exclude the portion of Dr. Staley's proposed expert testimony addressing ailments relevant to his medical malpractice claim.

## B.   Motion for Summary Judgment

### 1. Standard of Review

Rule 56 provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." Tabor v. Hilti, Inc., 703 F.3d 1206, 1215 (10th Cir. 2013) (internal quotation omitted)). "If the movant meets this initial burden, the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant." Talley v. Time, Inc., 923 F.3d 878, 893–94 (10th Cir. 2019) (internal quotation omitted).

When evaluating a motion for summary judgment, the court must view the facts and draw all reasonable inferences in favor of the non-moving party. Tabor, 703 F.3d at 1215. But this rule applies only if "there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for

the nonmoving party, there is no 'genuine issue for trial.'" Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986)).

Because Dr. Staley is proceeding pro se, the court construes his pleadings liberally. Ogden v. San Juan Cty., 32 F.3d 452, 455 (10th Cir. 1994). Still, he must comply with the procedural and evidentiary rules. Nielsen v. Price, 17 F.3d 1276, 1277 (10th Cir. 1994). If he does not, the court may not step in and be his advocate, for the court has a "limited and neutral role in the adversarial process[.]" Adler v. Wal–Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998).

### 2. Utah Law Applies.

The FTCA requires the court to apply the substantive law of the state where the alleged negligent "act or omission occurred." 28 U.S.C. § 1346(b)(1). Dr. Staley alleges that employees at health care facilities operated by the VA failed to diagnose and treat his condition during the years he sought treatment in both Salt Lake City, Utah, and, to a lesser extent, Phoenix, Arizona.

Because the events occurred in more than one state, the court must decide which state's law to apply. Although Dr. Staley received treatment in both Utah and Arizona, the most relevant medical treatments and evaluations—that is, appointments occurring between 2008 and 2014—took place in Utah. (See Am. Compl. ¶ 37 ("The occurrences [of alleged malpractice] took place … at the VA Medical Center in [Salt Lake City, Utah] and somewhat at the VA Medical Center [in Phoenix, Arizona]."); Mangelson Expert Report ("At this point [circa October 2008], the patient does not schedule any further dental appointments with the Phoenix VA, and resumes his primary care at the SLC VA."), 40–41 (listing key treatment dates falling

between 2007 and 2013, with all but one occurring at the SLC VA).)  Accordingly, the court

applies Utah law.[10]

### 3. Dr. Staley's Dental Malpractice Claim is Time-Barred.

The United States asserts that Dr. Staley's claim for dental/periodontal malpractice is

time barred under 28 U.S.C. § 2401(b) because he failed to present the claim in writing to the

VA within two years after the claim accrued.  The court agrees.

The FTCA is the exclusive remedy for individuals who wish to bring claims against the

United States "arising or resulting from the negligent or wrongful act or omission of any

employee of the Government while acting within the scope of his office or employment…." 28

U.S.C. § 2679(b)(1).  But before a person may file a tort claim against the United States in court,

he must exhaust his administrative remedies.  28 U.S.C. § 2675(a); McNeil v. United States, 508

U.S. 106, 113 (1993).  To do that, the claimant must present his claim in writing to the

appropriate federal agency, here the VA.  28 U.S.C. § 2675(a).  Moreover, he must present the

claim within two years after his claim accrues; otherwise, his claim is time-barred.  28 U.S.C.

§ 2401(b); Zeidler v. United States, 601 F.2d 527, 529 (10th Cir. 1979) (the FTCA two-year

statute of limitations begins to run when the action accrues).

---

[10] At any rate, the laws of Utah and Arizona regarding medical malpractice do not conflict in any material way.  The elements of a medical malpractice action are the same, as is the method of proof (that is, expert testimony).  Compare Jensen v. IHC Hosps., Inc., 82 P.3d 1076, 1095–96 (Utah 2003) (requiring proof of standard of care, breach of the standard, injury proximately caused by the doctor's negligence, and damages), and Dalley v. Utah Valley Reg'l Med. Ctr., 791 P.2d 193, 195–96 (Utah 1990) (requiring expert testimony to prove standard of care, breach of that standard, and proximate cause), with Seisinger v. Siebel, 203 P.3d 483, 492–93 (Ariz. 2009) (requiring proof of standard of care, breach of that standard of care, causation, and injury, through use of expert witness testimony), and Sampson v. Surgery Ctr. of Peoria, LLC, 491 P.3d 1115, 1118 (Ariz. 2021) (en banc) (requiring expert testimony to prove complex issue of causation in malpractice suit).

In Dr. Staley's November 4, 2015 claim to the VA, he wrote that he first learned of his periodontal problems on January 6, 2014, and so, according to him, his claim accrued on that date. If that were the case, his written claim would have been timely. But the undisputed record demonstrates that his claim accrued much earlier and, consequently, he did not file his administrative claim within the two-year time frame.

In malpractice cases, federal courts have applied the discovery rule to determine the accrual date.[11] Plaza Speedway Inc. v. United States, 311 F.3d 1262, 1267 (10th Cir. 2002). Such a claim accrues when the person becomes aware, or through the exercise of reasonable diligence should have become aware, that the failure caused his injury. Harvey v. United States, 685 F.3d 939, 948 (10th Cir. 2012).[12] "The 'discovery rule' applies to 'protect plaintiffs who are blamelessly unaware of their claim because the injury has not yet manifested itself or because the facts establishing a causal link between the injury and the medical malpractice are in the control

---

[11] "[D]etermination of when a claim … accrues is a matter of federal, not state, law." Kynaston v. United States, 717 F.2d 506, 508 (10th Cir. 1983).

[12] In Harvey, which addressed a malpractice claim under the FTCA, the Tenth Circuit adopted the standard articulated by the Ninth Circuit in Augustine v. United States, 704 F.2d 1074 (9th Cir. 1983):

> When a physician's failure to diagnose, treat, or warn a patient results in the development of a more serious medical problem than that which previously existed, identification of both the injury and its cause may be more difficult for a patient than if affirmative conduct by a doctor inflicts a new injury. Where a claim of medical malpractice is based on the failure to diagnose or treat a pre-existing condition, the injury is not the mere undetected existence of the medical problem at the time the physician failed to diagnose or treat the patient or the mere continuance of that same undiagnosed problem in substantially the same state. Rather, the injury is the development of the problem into a more serious condition which poses greater danger to the patient or which requires more extensive treatment. In this type of case, it is only when the patient becomes aware or through the exercise of reasonable diligence should have become aware of the development of a pre-existing problem into a more serious condition that his cause of action can be said to have accrued for purposes of section 2401(b).

Id. at 1078 (emphasis added).

of the tortfeasor or otherwise not evident.'"  Bayless v. United States, 767 F.3d 958, 965 (10th Cir. 2014) (quoting Plaza Speedway, 311 F.3d at 1267).

The United States, through Dr. Mangelson, contends that numerous dental practitioners told Dr. Staley he had periodontitis much earlier than 2014.  In response, Dr. Staley contends no one told him before 2014 of his "condition of progressive chronic generalized severe periodontal bone loss before 2014 in the VA or otherwise" and that he "was first aware of generalized severe periodontal bone loss on 1/6/2014," when Dr. Badger examined him.  (Staley Decl. ¶ 1.)  Even assuming the truth of Dr. Staley's statement (as the court must do in a summary judgment analysis), Dr. Staley had notice that he had periodontitis, the condition that led to the extensive bone loss, before 2014.

Dr. Mangelson, based on his review of Dr. Staley's medical records, said that during a May 2007 appointment, the VA employee told Dr. Staley he had periodontitis and performed "localized scaling and root planing."  (Mangelson Expert Report at 40.)  On December 6, 2010, a VA employee did a complete periodontal exam and told Dr. Staley he had generalized moderate periodontitis. And on November 15, 2012, Dr. Staley made an emergency appointment and underwent periodontal screening and recording (PSR).

Notably, Dr. Staley says his condition "met the VA criteria for severe periodontal bone loss in December of 2010."  (Opp'n to Mot. Summ. J. at 6, ECF No. 27.)  "Severe bone loss was seen in 24 of his 28 teeth" and "record evidence reveals [that bone loss] was there at least as early as December 6, 2010 and probably before."  (Id. at 7, 12–13.)

Dr. Mangelson points out that Dr. Staley, as a dentist, should have been aware of the condition of his own teeth, the reasons for the providers' treatment recommendations, the import

of the information the providers gave to him, and the nature of the dental procedures he received. Indeed, Dr. Staley considers himself an expert in dentistry and periodontics.

Given the record, the court cannot reasonably conclude that Dr. Staley had no reason before 2014 to suspect he had not been diagnosed with periodontitis and subsequently treated for bone loss. Dr. Staley has extensive training and experience in the field of dentistry. He was told in 2007 and again in 2010 that he had periodontitis. He sought treatment in 2011 and 2012. Even if Dr. Staley did not learn the extent of bone loss until 2014, the disease progressed over a number of years. He had reason to believe something was amiss long before 2014.

The discovery rule protects "blamelessly unaware" plaintiffs whose injuries have not yet manifested themselves or where facts showing cause of the injury "are in the control of the tortfeasor or otherwise not evident." Bayless, 767 F.3d at 965 (quoting Plaza Speedway, 311 F.3d at 1267). This was not a latent injury, and the information Dr. Staley needed was readily available.

Dr. Staley had an obligation to investigate many years before 2014. Had he exercised reasonable diligence, he would have become aware of his injury in at least December 2010, when he suggests significant bone loss had already occurred. To satisfy the FTCA statute of limitations, he should have filed his dental malpractice claim with the VA no later than December 2012. Because he filed his claim in November 2015, it is time-barred.

**4. Utah's Statute of Repose Extinguished Dr. Staley's Malpractice Claims.**

The United States asserts that Utah's statute of repose extinguished both of Dr. Staley's malpractice claims before he filed this suit.

A statute of repose is materially different from a statute of limitations. "Unlike statutes of limitations, statutes of repose abolish a cause of action after a certain period, even if the action

22

first accrues after the period has expired."  Lee v. Gaufin, 867 P.2d 572, 576 (Utah 1993).

> Although the commencement date for the applicable statute of limitations may be deferred and hinge upon the injured party's discovery of the existence of the cause of action, the point of commencement for the applicable statute of repose is commonly the date of the last act or omission that caused the plaintiff's injury.

Charles Alan Wright & Arthur R. Miller, 4 Federal Practice and Procedure § 1056 (4th ed. Apr. 2021 update).

In Utah, the statute of repose for a medical malpractice lawsuit is four years:  "A malpractice action against a health care provider shall be commenced within two years after the plaintiff or patient discovers, or through the use of reasonable diligence should have discovered the injury, whichever first occurs, but not to exceed four years after the date of the alleged act, omission, neglect, or occurrence." Utah Code Ann. § 78B-3-404(1) (emphasis added).

> The four-year repose period in [§ 78B-3-404(1)] runs from the commission of the alleged act of malpractice, irrespective of whether the malpractice is known or knowable, and all causes of action for malpractice not filed within that period are abolished.  To the extent that the statute of repose abolishes causes of action that could not have been sued on within the four-year period because they had not accrued, the statute acts substantively.

Lee, 867 P.2d at 576 (emphasis added).

Because Utah's statute of repose is substantive law (as opposed to a procedural statute of limitations), it can bar a suit under the FTCA.  See Hill v. SmithKline Beecham Corp., 393 F.3d 1111, 1117 (10th Cir. 2004) ("State substantive law applies to suits brought against the United States under the FTCA.") (citing 28 U.S.C. § 1346(b)(1)).  Indeed, the FTCA's "private person analog" provision requires that the government "be treated 'in the same manner and to the same extent as a private individual under like circumstances' depending on the law of the state where the tort occurred."  Hill v. United States, 81 F.3d 118, 120 (10th Cir. 1996) (quoting 28 U.S.C. § 2674).  In other words, the court must "approximate the result contemplated" by Utah law, id.

at 121, including giving the government "the benefits of certain state-law defenses in FTCA actions[.]" SmithKline Beecham, 393 F.3d at 1117.

Utah's statute of repose is not subject to equitable tolling. Instead, it "runs from the commission of the alleged act of malpractice, irrespective of whether the malpractice is known or knowable[.]" Lee. 867 P.2d at 576 (emphasis added).

The statute of repose can, however, be tolled by statute. Jensen v. Intermountain Health Care, 424 P.3d 885, 891 n.5 (Utah 2018). Of particular relevance here, the Utah Health Care Malpractice Act requires a party to file his medical malpractice claim with an administrative body before filing a suit in court, and while his claim is pending, the pre-litigation review period tolls Utah's statute of repose. Id. at 890–91. Specifically, the Act tolls the statute of repose until 60 days after (1) the date the agency issues a decision, or (2) the expiration of the time for holding a pre-litigation hearing, whichever is later. Utah Code Ann. § 78B-3-416(3)(a). Once that date arrives, the statute of repose begins to run again.

The FTCA has a similar exhaustion requirement. "An action shall not be instituted upon a claim against the United States … unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675. But, just as the Utah Health Care Malpractice Act does, the FTCA limits the time a party must wait before filing in court: "The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." Id. (emphasis added).

It follows that in order to protect an FTCA claimant who must exhaust his administrative remedies before filing in court, and to approximate the result created by Utah law under the

24

"private person analog" provision, the filing of a claim with the federal agency should toll the statute of repose for six months during the FTCA review process, just as the Utah Health Care Malpractice Act does for claims filed in Utah courts.  See Nationwide Mut. Ins. Co. v. United States, 3 F.3d 1392, 1397 (10th Cir. 1993) ("[T]he 'like circumstances' inquiry requires only that the United States be analogized to a similarly situated party.'").  Continuing the analogy, the passage of six months without a federal agency decision restarts the statute of repose in an FTCA claim just as expiration of the Utah Health Care Malpractice Act's tolling period restarts the statute of repose in state court.

Dr. Staley asserts that such a result is inappropriate because FTCA's statute of limitations pre-empts Utah's statute of repose.  The court finds his argument unpersuasive for the same reasons discussed by the Seventh Circuit in the factually similar case of Augutis v. United States, 732 F.3d 749 (7th Cir. 2013).

In Augutis, the plaintiff had foot surgery in a VA hospital in July 2006.  Because of complications, doctors had to amputate Mr. Augutis's leg two months later.  He filed a timely FTCA administrative claim in July 2008.  The VA did not formally deny his claim for over two years, in September 2010.  He then requested reconsideration of the denial, as FTCA regulations permitted, but the VA also denied that request.  Mr. Augutis filed his lawsuit April 2012, over five years after the surgery but within the time permitted by the FTCA.  The United States moved to dismiss the complaint on the ground that Mr. Augutis's claim had been extinguished by Illinois's four-year statute of repose.  The district court granted the motion, and Mr. Augutis appealed.

The Seventh Circuit, relying on Illinois Supreme Court decisions, treated the four-year limit as a statute of repose, which imposed "a substantive limitation on the cause of action for

medical malpractice." Id. at 753.  Mr. Augutis argued that the FTCA's procedural scheme preempted the statute of repose.  The Seventh Circuit first noted that the FTCA does not explicitly preempt state statutes of repose and that far from implicitly preempting state law, it incorporates state law into FTCA cases.  The appellate court further concluded there was no conflict between the FTCA and the statute of repose because a claimant could satisfy the requirements of both statutes.  Although Mr. Augutis had to wait over two years to receive the VA's written denial of his administrative claim, that did not prevent him from complying with the statute of repose.  He was free to file his lawsuit beginning six months after submitting his administrative claim, and at that point he had eighteen months to do so before the statute of repose expired.  Acknowledging that it was unfortunate the statute expired while Mr. Augutis was waiting for the VA to act, the appellate court stated "that cannot cause us to expand the FTCA's limited waiver of sovereign immunity." Id. at 754.

The relevant cases upon which Dr. Staley relies to support his preemption argument are unpersuasive.  In Jones v. United States, 789 F. Supp. 2d 883 (M.D. Tenn. 2011), and Zander v. United States, 786 F. Supp. 2d 880 (D. Md. 2011), the district courts held that the FTCA's statute of limitations does preempt state statutes of repose.  Those decisions reasoned that because the FTCA gives a claimant an indefinite period of time to file a complaint if the agency does not formally deny his administrative claim, a statute of repose that would bar the claim conflicts with the FTCA.  Jones, 789 F. Supp. 2d at 892; Zander, 786 F. Supp. 2d at 886.  But a true conflict would exist only if the FTCA required a claimant to wait indefinitely for a formal denial.  The FTCA does not.  The claimant may file a claim any time after six months have passed.  The Seventh Circuit's Augutis decision contains the better reasoning.

26

Now, having determined that Utah's statute of repose applies, the court must determine the date the statute began to run in Dr. Staley's case.  That requires pinning down the date the alleged malpractice occurred.

As noted above, the alleged dental malpractice occurred in December 2010, if not before.  Accordingly, the four-year statute of repose, when considering the six-month tolling period, extinguished that claim in June 2015, more than one year before he filed his initial claim with the VA (on November 4, 2015), and two-and-a-half years before he filed his complaint on December 7, 2018.  But even assuming Dr. Staley's claims did not arise until January 6, 2014 (as he asserts), the statute of repose extinguished his claim on July 6, 2018.  At a minimum, he filed his court action five months too late.[13]

As for his medical malpractice claim, he ties his non-dental injuries to his periodontal disease and to his meeting with Dr. Badger on January 6, 2014.  He says he suffered mental anguish on that date when he saw the extent of bone loss.  And he links his physical ailments to his periodontitis, which began to manifest in 2010, if not earlier.  Considering his allegations, his medical malpractice claim arose at the same time as his dental malpractice claim.  Accordingly, the same calculation for his dental malpractice claim applies, and the statute of repose extinguished the medical malpractice claim in June 2015.

Because Utah's statute of repose extinguished both of Dr. Staley's malpractice claims well before his filed his action in 2018, the court grants summary judgment to the United States on those claims.

---

[13] Even were the court to add 60 days to the FTCA's six-month review period, as Utah's tolling statute does in § 78B-3-416(3)(a)(i), Dr. Staley's dental malpractice claim would have been three months too late.

### 5.  Dr. Staley's Lack of Expert Evidence Bars His Medical Malpractice Claim.

The United States alternatively contends the court must grant summary judgment on Dr.

Staley's medical malpractice claim because Dr. Staley has not presented evidence necessary to

establish the standard of care, breach of that standard, and causation of Dr. Staley's injuries by

the alleged breach.  The court agrees.

In Utah, to prevail on a medical malpractice claim, a plaintiff must establish (1) the

standard of care, (2) defendant's failure to comply with that standard of care, (3) injury, and

(4) that the defendant's acts or omissions proximately caused the plaintiff's injuries.  Jensen v.

IHC Hosps., Inc., 82 P.3d 1076, 1095–96 (Utah 2003).  To establish the standard of care, and

breach of that standard, a plaintiff "is generally required to produce an expert witness who is

acquainted with the standards of care in the same or a similar field as the defendant doctor."

Dalley v. Utah Valley Reg'l Med. Ctr., 791 P.2d 193, 195–96 (Utah 1990).  The same is true of

causation.  Chadwick v. Nielsen, 763 P.2d 817, 821 (Utah Ct. App. 1988).  The rare exception to

that rule occurs when the topic "'is within the common knowledge and experience of the

layman.'" Jensen, 82 P.3d at 1096 (quoting Jennings v. Stoker, 652 P.2d 912, 914 (Utah 1982));

Chadwick, 763 P.2d at 821.

Dr. Staley is not a medical doctor or mental health professional.  The court has already

determined that his dental expertise does not qualify him to opine on the treatment and cause of

his physical (non-dental) and psychological maladies and that those topics are not a subject

within the common knowledge of a layperson.

Dr. Staley has not offered any evidence other than his own testimony, and the court has

excluded that testimony.  In the absence of expert evidence at trial, Dr. Staley will not be able

establish, at a minimum, three elements of his case.  With no evidence to support a prima facie

case of medical malpractice, the court must grant summary judgment[14] because Dr. Staley has "fail[ed] to make a showing sufficient to establish the existence of an element essential to [his] case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### 6. Dr. Staley's Gross Negligence Claim Lacks Supporting Evidence.

Proving gross negligence is a tall order.  In Utah, "gross negligence, which is associated with willful, wanton, and reckless conduct, applies to conduct that is so far from a proper state of mind that it is treated in many respects as if harm was intended and usually is accompanied by a conscious indifference to consequences."  Blaisdell v. Dentrix Dental Sys., Inc., 284 P.3d 616, 622 (Utah 2012) (internal citation and quotation marks omitted).

To determine whether summary judgment on a gross negligence claim is proper, the court looks at "whether, based on the undisputed material facts, reasonable minds could reach but one conclusion as to whether the defendant 'observe[d] even slight care' and did not demonstrate 'carelessness or reckless to a degree that shows utter indifference to the consequences that may result.'"  Penunuri v. Sundance Partners Ltd., 423 P.3d 1150, 1159 (Utah 2017) (quoting Blaisdell, 284 P.3d at 621).  Dr. Staley does not provide any evidence allowing the court to conclude that reasonable minds could differ about whether VA employees failed to use even the slightest of care when treating him.  Accordingly, the court dismisses this claim.

### 7. The Negligent Infliction of Emotional Distress Claim Lacks Evidence.

Dr. Staley alleges that medical and dental malpractice caused him emotional distress.

---

[14] Although proximate cause is generally an issue for the jury, the court may rule on proximate cause here because Dr. Staley's failure to provide any competent evidence would require the jury to speculate.  See Hall v. Conoco Inc., 886 F.3d 1308, 1317 (10th Cir. 2018) (lack of expert testimony on complex issue of causation of disease required grant of summary judgment); Thurston v. Workers Comp. Fund of Utah, 83 P.3d 391, 395-96 (Utah Ct. App. 2003) (holding that summary judgment is appropriate where a plaintiff fails to provide direct evidence linking alleged negligence to injury, because otherwise proximate cause would be left to conjecture).

The United States asserts that his claim fails because (1) the underlying claims of malpractice fail and so his tort claim based on those claims also fails; (2) the standard of proof requires testimony from a mental health expert; (3) Dr. Staley did not include the claim in his SF-95 administrative claims so he has failed to exhaust his administrative remedies; and (4) Dr. Staley has not provided evidence to establish the elements of the tort.  Because Dr. Staley cannot meet the standard of proof, the court need not address the other points the United States raises.

To establish a claim for negligent infliction of emotional distress, a plaintiff must show that the defendant caused him emotional distress "under circumstances where [the defendant] should have realized that the 'conduct involved an unreasonable risk of causing the distress' and, 'from facts known to [the defendant], should have realized that the distress, if it were caused, might result in illness or bodily harm.'"  Snow v. Chartway Fed. Credit Union, 306 P.3d 868, 872 (Utah Ct. App. 2013) (quoting Harnicher v. Univ. of Utah Med. Ctr., 962 P.2d 67, 69 (Utah 1998)).   The emotional distress "must be severe; it must be such that a reasonable [person,] normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case."  Hansen v. Mountain Fuel Supply Co., 858 P.2d 70, 975 (Utah 1993) (internal quotation marks and citation omitted).  Moreover, the "emotional distress" must be proven by evidence of "severe physical or mental manifestations."  Carlton v. Brown, 323 P.3d 571, 585 (Utah 2014).  Utah law requires this "because the existence of and cause of a mental illness is not obvious in a manner comparable to a physical injury or illness."  Harnicher, 962 P.2d at 72 (emphasis added).

Dr. Staley contends that his testimony about the "tremendous mental anguish" he suffered is sufficient to show the existence and cause of his distress because "classifying mental illness is a more subjective endeavor" and "[c]an be recognized and conveyed by laypersons"

through "subjective descriptive testimonies."  (Opp'n to Mot. Summ. J. at 37–39.)  But, as stated in <u>Harnicher</u>, "practicality demands that the standard of proof in such cases be more than merely subjective."  <u>Harnicher</u>, 962 P.2d at 71.  Dr. Staley must have expert testimony to prove that the alleged malpractice negligently caused severe emotional distress manifested in severe mental or physical injuries.  The absence of expert testimony requires dismissal of this claim.

**8.  Dr. Staley Has No Standing to Allege Loss of Consortium.**

In Utah, "[t]he spouse of a person injured by a third party … may maintain an action against the third party to recover for loss of consortium."  Utah Code Ann. § 30-2-11(2).  Dr. Staley's spouse is not a named party and is not bringing the claim for loss of consortium. Accordingly, the court dismisses that claim.

<u>**ORDER**</u>

For the foregoing reasons, the court GRANTS the United States' Motion to Strike Plaintiff's Motion in Limine (ECF No. 33), GRANTS the United States' Motion to Exclude Expert Testimony and Opinions of Edward C. Staley (ECF No. 32), and GRANTS the United States' Motion for Summary Judgment (ECF No. 25).

DATED this 5th day of April, 2022.

BY THE COURT:

TENA CAMPBELL
U.S. District Court Judge